UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MARIYAM AKMAL,

                    Plaintiff,

        v.

CENTERSTANCE, INC., TRUEBLUE,
INC., an agent of Labor Ready, JOHN
AND JANE DOES 1-10,

                    Defendants.

CASE NO. 11-5378 RJB

ORDER REGARDING
DEFENDANTS' MOTIONS TO
DISMISS

        This matter comes before the Court for a second review of the Defendant NTT

Centerstance, Inc.'s (f/k/a Centerstance Inc.) ("NTT Centerstance") Motion to Dismiss

Complaint pursuant to Fed. R. Civ. P. 12(b)(6), 28 U.S.C. § 1915(e)(2)(B), and 12(b)(5) (Dkt.

42) and Defendant TrueBlue, Inc.'s ("TrueBlue") Joinder of Motion filed by NTT Centerstance,

Inc. to Dismiss Complaint pursuant to Fed. R. Civ. P. 12(b)(6), 28 U.S.C. § 1915(e)(2)(B), and

12(b)(5) (Dkt. 43) in light of Plaintiff's April 5, 2013 amended complaint; and NTT Centerstance

and TrueBlue's Motions to Strike or Alternatively for Relief from a Deadline to File a

Responsive Pleading (Dkts. 54 and 55).  The Court has reviewed the relevant pleadings, the

record, and is fully advised.

        As stated in the March 19, 2013 Order ("prior order") the Defendants' motions to dismiss

are being considered again here in light of the pro se Plaintiff's April 5, 2013 amended

1    complaint.  Upon review of the amended complaint, Defendants' motions to dismiss Plaintiff's

2    federal claims should be granted because Plaintiff has again failed to allege facts to state a

3    federal claim.  Her federal claims should be dismissed with prejudice, and she should not be

4    given further leave to amend her complaint.  All Plaintiff's state law claims should be dismissed

5    except her breach of contract claim against NTT Centerstance.  Plaintiff and NTT Centerstance

6    should be ordered to show cause, if any they have, why this Court should not decline to exercise

7    supplemental jurisdiction, and dismiss Plaintiff's state law contract claim without prejudice.

8           Defendants' motions to strike Plaintiff's amended complaint, because it was filed one

9    week late, should be denied.  Their motion for an extension of time to file a responsive pleading

10   to the amended complaint should be granted.

11                      I.     **PROCEDURAL HISTORY AND THE AMENDED COMPLAINT**

12          On May 17, 2011, Plaintiff, an African American woman, filed this discrimination action.

13   Dkt. 1.  She filed her complaint in this Court on May 19, 2011.  Dkt. 4.  Plaintiff was granted in

14   forma pauperis status and on May 26, 2011, Plaintiff's Application for Court Appointed Counsel

15   was referred to the Screening Committee of this Court's pro bono panel.  Dkt. 8.  The Committee

16   reviewed the case, and on August 22, 2011, declined to accept the case.  Dkt. 19.  Plaintiff's

17   Application for Court Appointed Counsel was denied on August 30, 2011, and her Motion for

18   Reconsideration of the Order Denying the Application for Court Appointed Counsel was denied

19   on September 13, 2011.  Dkts. 19 and 21.

20          On September 15, 2011, Plaintiff filed a Notice of Appeal regarding these two orders and the

21   case was stayed.  Dkts. 26 and 27.  On January 3, 2013, the Ninth Circuit Court of Appeals

22   dismissed Plaintiff's appeal, finding that it did not have jurisdiction to consider her appeal.  Dkt.

23   32.  That same day, January 3, 2013, Plaintiff renewed her motion to have the complaint served

24   by the U.S. Marshals Service.  Dkt. 33.  The Mandate issued on January 28, 2013, and the stay of

ORDER REGARDING DEFENDANTS' MOTIONS
TO DISMISS- 2

1    the case was lifted as of that that day by minute order.  Dkts. 34 and 44.  On January 28, 2013,

2    Plaintiff's motion to have the U.S. Marshal Service serve her case on the named Defendants was

3    granted and a new scheduling order was issued.  Dkts. 35 and 36.

4        On March 19, 2013, Defendants' motions to dismiss (Dkt. 42 and 43) were granted, in part,

5    and denied, in part, and renoted, in part, to give the Plaintiff an opportunity, if she wished, to file

6    an amended complaint by March 30, 2013.  Dkt. 50.  Defendants' motions for a more definite

7    statement were also granted.  *Id.*  Plaintiff filed a 26 page amended complaint on April 5, 2013.

8    Dkt. 51.  Defendants' motions to dismiss are now being reevaluated in light of the Plaintiff's

9    April 5, 2013 amended complaint.

10        **A.  FACTS IN PLAINTIFF'S AMENDED COMPLAINT**

11        Plaintiff alleges in her amended complaint that she "has long been the target of a stalking

12    and harassment campaign by an anonymous group of networked individuals, some of whom

13    work in the information technology industry, others who work within law enforcement, . . .

14    private investigators, and a gang of computer hackers."  Dkt. 51, at 2-3.  She states that "as such"

15    she has been "subjected to an ongoing barrage of vile, vulgar, sexist and racist comments

16    directed to her and about her in email messages, chat rooms, anonymous instant messages sent to

17    her and/or posted about her on internet message boards."  *Id.* at 3.  Plaintiff asserts that she was,

18    at some point, referred to as "sand nigga," "dot-headed middle-eastern bitch," and "terrorist."

19    *Id.,* at 3.  (Plaintiff does attach emails utilizing that language, but those emails are dated in

20    February and March of 2003 (Dkt. 51-5), four years before she alleges she had any contact with

21    Defendants and or/their employees.)  She states that the "parties involved have always ensured

22    that Plaintiff is aware that they have the ability to physically track her movements in real life and

23    to solicit the assistance of those in her environment to reinforce on their behalf."  *Id.*, at 5.

24

ORDER REGARDING DEFENDANTS' MOTIONS
TO DISMISS- 3

1    Plaintiff states that "she is not welcome- not where she resides nor in many of the places where
2    she has worked since she found herself the target of this phenomenon." *Id.*

3          She alleges companies and "government agencies" abuse certain surveillance software to
4    spy on their employees and feels she has been a victim. *Id.,* at 5-6.  Plaintiff asserts that she has
5    been "accused by a Transportation Security Administration officer of possibly having a bomb
6    hidden on her person." *Id.,* at 20.  She asserts that she has been added to the government's
7    national security watch lists. *Id.,* at 21.

8          Plaintiff states that she has a Muslim father and Christian mother. *Id.,* at 19.  When
9    family members call on her cell phone while she is at work, she is fearful of using a traditional
10   Arabic language greeting because of the "hostility, suspicions and paranoia of many in her
11   environment" and she feels that "they can use that as an excuse to deny her employment and
12   other rights . . . all in the name of the 'war on terrorism.'" *Id.*

13         Plaintiff asserts that she has had to listen to "another worker state that the only good Arab
14   is a dead Arab and other disparaging remarks about Islam and Muslims." *Id.,* at 6.  She alleges
15   that later she "returned to her vehicle while it was parked in the underground garage belonging to
16   this company to discover that security personnel had been inside of it and had left a ticket on it."
17   *Id.,* at 7.  She alleges that "[t]his was barely more than two years after the attacks on 911 yet
18   these unlawful intrusions or 'vehicle prowls' continue to this day and last occurred . . . on April
19   1, 2013." *Id.*  She states that she feels she is "being stalked and harassed by the previously
20   referenced networked individuals working together in concert." *Id.*  Plaintiff further alleges that
21   "in another work related instance it was a white female with bone straight hair lamenting 'nappy
22   hair' with other non-African American workers." *Id.*  Plaintiff also states that she got an instant
23   message from her boss at Cingular Wireless asking her if she was naked in a photo that she had
24   attached to her instant messenger profile at work. *Id.*

1    Plaintiff does not, in fact, allege that any of the Defendants named here or their

2    employees participated in any of the above allegations.

3    In any event, in regard to the parties before the Court, Plaintiff states that she entered into

4    an employment agreement with "the IT placement firm Centerstance," a Defendant here, on

5    February 11, 2007.  *Id.*.  The agreement with NTT Centerstance purportedly "involved an

6    internal software development project with [NTT Centerstance's] client TrueBlue" also a

7    Defendant here, "who was operating under the trade name of Labor Ready."  *Id.,* at 3-4.  She

8    alleges that the agreement had an ending date of August 14, 2007, with a possible extension.  *Id.,*

9    at 4.  Plaintiff asserts that the agreement stated that it could be terminated "without cause" with

10   15 days notice and NTT Centerstance terminated the agreement with only 14 days notice.  *Id.,* at

11   13.  Plaintiff contends that while on the job, she performed her duties in accord with "industry

12   standards," and received no complaints from the Defendants about her performance.  *Id.,* at 4.

13   Plaintiff asserts that while she was on the project, two of Defendant TrueBlue's

14   employees let her know that their "significant other[s]" worked in law enforcement.  *Id.*  She

15   states that she overheard one of them, John Davis, say to another coworker "why do you think I

16   keep getting away with this?"  *Id.*  She states that she "could not help but wonder if this was

17   merely a taunt in line with the comments made by the person posting online ethnic slurs. . . in

18   response to the FBI declining to assist her."  *Id.,* at 8-9.

19   Plaintiff further alleges that:

20       It was no accident that she ended up in a hostile environment sitting next
         to John Davis where she was subjected to racial animosity and hostility and that

21       she was intentionally put into that environment in violation of 42 U.S. Code §
         Section [sic] 1981 in order to facilitate the desired access to her so that specific

22       employees of Centerstance, Labor Ready, and the other employment agencies
         which made up the Ellis team could carry out their racial harassment and

23       retaliation.

24

ORDER REGARDING DEFENDANTS' MOTIONS
TO DISMISS- 5

1    *Id.* Plaintiff asserts that she received an email at some point entitled 'Wanted Dead or Alive –

2    Collections,' the body of which had to do with one of the tasks she had been assigned on the

3    Ellis project." *Id.*, at 10. She states that "[t]his email elicited thoughts and images in [her mind]

4    of the FBI's terrorism wanted posters in regards to Osama bin Ladin" and "try as she might" she

5    could not discern any connection between this phrase and the body of the email. *Id.* She states

6    that it was at this point her work environment went from "feeling a little less than friendly to

7    outright hostile." *Id.* She asserts that the "hostility in her environment was severe, pervasive,

8    and the tension and anxiety of waiting for the next 'punishing act' was starting to take its toll" on

9    Plaintiff. *Id.*

10          She requested NTT Centerstance move her away from her "antagonist," whom she

11   asserts was John Davis, an employee of Defendant True Blue. *Id.,* at 11. Although her request

12   to be moved was granted, a week later her contract was terminated two months early. *Id.*

13   Plaintiff asserts that she was told that there was "insufficient work to keep her on the project."

14   *Id.* She states that one of the last conversations she had with "a team member" was that he

15   wanted to see "white(s) only." *Id.*, at 16.

16          Plaintiff states that Defendants continued to advertise for contractors to perform the same

17   work she was performing until at least August of 2007. *Id.* Plaintiff states that she tried to return

18   to work for Labor Ready twice, but was not rehired. *Id.* She further alleges that "attempts by

19   Plaintiff's previous employer(s) to verify her employment on the project resulted in Plaintiff

20   being told that they could no longer work with her due to what Defendants were saying about

21   her." *Id.,* at 12.

22          Plaintiff asserts a state law claim for breach of contract. *Id.* She cites 42 U.S.C. § 1981,

23   "racial discrimination/disparate treatment/pretext," "racial harassment/hostile work

24   environment," and "retaliation for participation in protected activity." *Id.*

ORDER REGARDING DEFENDANTS' MOTIONS
TO DISMISS- 6

**B.  PENDING MOTIONS**

Both Defendants filed motions to dismiss (Dkts. 42 and 43), which were granted as to Plaintiff's claims under RCW 4.16.040(1)(Washington's statute of limitations on contract actions), RCW 49.6.020 [sic], and RCW 49.60.020 (the Washington Law Against Discrimination).  Dkt. 50.  Defendants' motions to dismiss (Dkt. 42 and 43) were renoted to be reevaluated with Plaintiff's amended complaint, if she wished to file one, in regard to Plaintiff's 42 U.S.C. § 1981 claim, the Washington Consumer Protection Act claim, and her breach of contract claim asserted against TrueBlue.  Dkt. 50.

In the motion to dismiss, NTT Centerstance maintains that Plaintiff's claims should be dismissed for failure to state a claim because she has not alleged sufficient facts to support cognizable claims.  Dkt. 42.  Defendant TrueBlue, joins in NTT Centerstance's motion.  Dkts. 43 and 49.

Defendants additionally file motions to strike Plaintiff's amended complaint because she filed the pleading one week after the date set by the prior order.  Dkts. 54 and 55.  Defendants move in the alternative, for more time to file a responsive pleading to Plaintiff's amended complaint.  *Id.*

Plaintiff files a response, and indicates that she inadvertently missed her deadline.  Dkt. 57.  She does not state any objections to giving Defendants an extension of time.  *Id.*

## II.  <u>DISCUSSION</u>

**A.  MOTIONS TO STRIKE, OR IN THE ALTERNATIVE, FOR AN EXTENSIONOF TIME**

Defendants' motions to strike (Dkts. 54 and 55) Plaintiff's amended complaint because she filed it one week after the date set by the prior order should be denied.  In the interest of timely resolving this matter, a one week inadvertent delay should be excused.

1   Defendants' motion for an extension of time to file a responsive pleading to Plaintiff's

2   amended complaint (Dkts. 54 and 55) should be granted.  The responsive pleading, if any, should

3   be filed by May 10, 2013.

4   **B.  MOTION TO DISMISS – FED. R. CIV. P. 12(b) STANDARD**

5   Fed. R. Civ. P. 12(b) motions to dismiss may be based on either the lack of a cognizable

6   legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  *Balistreri*

7   *v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990).  Material allegations are taken

8   as admitted and the complaint is construed in the plaintiff's favor.  *Keniston v. Roberts*, 717 F.2d

9   1295 (9th Cir. 1983).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not

10   need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement

11   to relief requires more than labels and conclusions, and a formulaic recitation of the elements of

12   a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65

13   (2007)(*internal citations omitted*).  "Factual allegations must be enough to raise a right to relief

14   above the speculative level, on the assumption that all the allegations in the complaint are true

15   (even if doubtful in fact)."  *Id.* at 1965.  Plaintiffs must allege "enough facts to state a claim to

16   relief that is plausible on its face."  *Id.* at 1974.

17   If a claim is based on a proper legal theory but fails to allege sufficient facts, the plaintiff

18   should be afforded the opportunity to amend the complaint before dismissal.  *Keniston v.*

19   *Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983).  If the claim is not based on a proper legal theory,

20   the claim should be dismissed.  *Id.*  "Dismissal without leave to amend is improper unless it is

21   clear, upon de novo review, that the complaint could not be saved by any amendment."  *Moss v.*

22   *United States Secret Service*, 572 F.3d 962, 972 (9th Cir. 2009)(*internal citations omitted*).

23   **C.  MOTION TO DISMISS - FAILURE TO STATE A CLAIM**

24   1.  Federal Claims under 42 U.S.C. § 1981 of the Civil Rights Act of 1886

Section 1981 provides:

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) Protection against impairment

The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

The Prior Order contained the standard for evaluating a § 1981 claim. Dkt. 50. It provided:

Section 1981 "prohibits racial discrimination in the making and enforcement of private contracts." *Runyon v. McCrary*, 427 U.S. 160, 168 (1976). Whether a plaintiff faced intentional racial discrimination in violation of Section 1981 is governed by the *McDonnell Douglas* burden shifting test. *Patterson v. McLean Credit Union*, 491 U.S. 164, 186 (1989)(*superseded by statue on other grounds*)(*citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

The first step of the *McDonnell Douglas* test requires that Plaintiff establish a prima facie case of discrimination. *Coghlan v. American Seafoods Co. LLC,* 413 F.3d 1090, 1094 (9th Cir. 2005). To do so, Plaintiff must establish that (1) she belongs to a protected class, (2) she was qualified for the position (she was performing her job in a satisfactory manner), (3) she was subjected to an adverse employment action, and (4) that "similarly situated individuals outside [the] protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Peterson v. Hewlett-Packard Co.,* 358 F.3d 599, 603 (9th Cir. 2004); *Coghlan*, at 1094.

If the Plaintiff meets the first portion of the *McDonnell Douglas* test, "[t]he burden of production, but not persuasion, ... shifts to the [Defendants] to articulate some legitimate, nondiscriminatory reason for the challenged action." *Chuang v. Univ. of Cal. Davis Bd. of Trustees*, 225 F.3d 1115, 1123-24 (9th Cir. 2000). In the last step of the *McDonnell Douglas* test, should the defendant carry this burden, "the plaintiff must then have an opportunity to prove by a

1    preponderance of the evidence that the legitimate reasons offered by the
     defendant were not its true reasons, but were a pretext for discrimination."
2    *McDonnell Douglas* at 802.

3              a.   *Prima Facie Test under McDonnell Douglas*

4         Defendants' motion to dismiss Plaintiff's § 1981 claims should be granted.  As stated in

5    the prior order, although Plaintiff alleges in her amended complaint that she is African American,

6    and was qualified for the job she was performing satisfactorily, she does not allege facts

7    regarding Defendant TrueBlue on the third element of the *McDonnell Douglas* prima facie test.

8    She does not allege that Defendant TrueBlue subjected her to an adverse employment action.

9    She does allege that NTT Centerstance subjected her to an adverse employment action -the early

10   termination of her contractor's agreement with NTT Centerstance.

11        She also fails in her amended complaint to make a showing on the fourth prima facie

12   requirement under *McDonnell Douglas* as to either Defendant TrueBlue or NTT Centerstance.

13   Plaintiff did not allege sufficient facts from which to conclude that that "similarly situated

14   individuals outside [the] protected class were treated more favorably," or "other circumstances

15   surrounding the adverse employment action give rise to an inference of discrimination."

16   *Peterson,* at 603.

17        As to this fourth factor of the prima facie test, she asserts that she lost her contract

18   because of her "race" but does not offer any facts which would support that allegation.  Her

19   allegation that NTT Centerstance, an IT placement firm, continued to advertise for computer

20   programmers does not give rise to an inference that her contract was terminated as a result of

21   racial discrimination.  Her assertion that some unknown member of the "team" stated that he

22   wanted to "see white(s) only" is not sufficient to tie any of the Defendants before the Court to

23   this claim.  This allegation, like many of the other extensive allegations of racial and sexual

24   discrimination, stalking etc. in the amended complaint are not connected to the Defendants in

1  any manner, and certainly do not meet the *McDonnell Douglas* prima facie test against these

2  Defendants.  She alleges that she was "harassed" but gives no facts from which to conclude she

3  was treated in a manner which leads to a viable action under § 1981 against the Defendants

4  named here.  Plaintiff has failed to allege "enough facts to state a claim to relief that is plausible

5  on its face" as to her § 1981 claim.  *Twombly,* at 1974.

6                        b.  *Burden Shifting Under McDonnell Douglas*

7          Plaintiff further asserts that NTT Centerstance's purported reason for terminating her

8  contract early was because there was insufficient work to keep her busy was a pretext for

9  discrimination.  Dkt. 51.  Aside from her bare assertions, Plaintiff makes no allegations of facts

10 in her amended complaint supporting the notion that the reasons offered by the NTT

11 Centerstance "were not its true reasons, but were a pretext for discrimination." *McDonnell*

12 *Douglas* at 802.

13                        c.  *Conclusion for Claims under § 1981*

14         Plaintiff's claims under § 1981 should be dismissed.  Plaintiff should not be granted leave

15 to amend her complaint again.  This case has been pending for quite some time, and the events in

16 question happened almost six years ago.  Plaintiff has amended her complaint, and is still unable

17 to articulate any facts in support of her § 1981 claims against the Defendants here.  Further

18 amendment should be denied.  *Telesaurus VPC, Inc. v. Power,* 623 F.3d 998, 1003 (9th Cir.

19 2010)(dismissal without leave to amend not error where party had opportunity to amend and

20 failed to cure deficiencies).

21         2.  Claims Under 42 U.S.C. § 1983

22         Plaintiff asserts various claims that appear to sound under 42 U.S.C. § 1983.  To the

23 extent that she does, those claims should be dismissed with prejudice as barred by the statute of

24 limitations.  State personal injury law governs that statute of limitations period for § 1983 claims.

ORDER REGARDING DEFENDANTS' MOTIONS
TO DISMISS- 11

1  *Douglas v. Noelle,* 567 F.3d 1103, 1109 (9th Cir. 2009).  Under RCW 4.16.080(2), Plaintiff had

2  three years to bring her claims.  Plaintiff filed this action more than three years after the events in

3  question.  To the extent she alleges claims pursuant to § 1983, they should be dismissed with

4  prejudice.

5         3.  <u>State Law Claims</u>

6            *a.  Contract Claim*

7        Plaintiff reasserts her contract claim in her amended complaint.  As stated in the prior

8  order, "[t]o assert a claim for breach of contract, a plaintiff must allege the existence of a valid

9  contract, a breach of the contract, and damages."  Dkt. 50 (*citing Meyers v. State*, 152 Wash.

10  App. 823, 827, 828 (2009)).

11        Defendant TrueBlue's motion to dismiss Plaintiff's contract claim, to the extent that she

12  makes one, should be granted.  Plaintiff, despite being given an opportunity to do so, fails to

13  allege in her amended complaint that she had any contractual relationship with TrueBlue.

14  Plaintiff should not be given leave to file another amended complaint.  *Telesaurus,* at 1003.

15        Defendant NTT Centerstance's Motion to Dismiss Plaintiff's contract claim should be

16  denied.  Plaintiff alleges that she had an agreement with NTT Centerstance, that it was breached

17  because she received on 14 days notice of termination of the agreement instead of 15 days, and

18  that she was damaged.  She has alleged sufficient facts which could plausibly entitle her to relief.

19          *b.  RCW 49.60.020 - Washington Law Against Discrimination*

20        To the extent Plaintiff attempts to reassert her claims under the Washington Law Against

21  Discrimination, they should be again dismissed.  The statute of limitations for actions involving

22  claims under RCW 49.60 is three years.  *Antonius v. King County*, 153 Wn.2d 256 262 (2004).

23

24

1   All of the events of which Plaintiff complains occurred well before May of 2008, that is more

2   than three years prior to her filing her complaint in May of 2011.  Further, Plaintiff should not be

3   afforded leave to amend, because such leave would be futile.

4                    *c.   RCW 19.86.070 – Washington Consumer Protection Act*

5          In the prior order, Plaintiff was informed that she had an opportunity to amend her

6   complaint to add facts to support her claim under the Washington Consumer Protection Act.

7   Dkt. 50.  Defendants' motions as to this claim were renoted to be considered after Plaintiff filed

8   her amended complaint.  *Id.*  She has failed to plead any facts in support of her Washington

9   Consumer Protection Act claim.  Defendants' motions to dismiss the claim, to the extent that

10  such a claim is made, should be granted.

11  **D.  CONCLUSION AND ORDER TO SHOW CAUSE**

12         Defendants' motions to dismiss Plaintiff's federal law claims should be granted and

13  Plaintiff should not be given another opportunity to amend her complaint.  *Telesaurus,* at 1003.

14  Defendants' motions to dismiss all of Plaintiff's state law claims should be granted, except for

15  her state law contract claim against NTT Centerstance.  The only claim remaining, then, is

16  Plaintiff's breach of contract claim against NTT Centerstance.

17         Plaintiff and the remaining Defendant NTT Centerstance should be ordered to show

18  cause, if any they have, why this Court should not decline to exercise supplemental jurisdiction

19  on the remaining state law claim for breach of contract against NTT Centerstance.

20         Pursuant to 28 U.S.C. § 1367(c), district courts may decline to exercise supplemental

21  jurisdiction over a state law claims if (1) the claims raise novel or complex issues of state law,

22  (2) the state claims substantially predominate over the claim which the district court has original

23  jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction,

24  (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

ORDER REGARDING DEFENDANTS' MOTIONS
TO DISMISS- 13

1   "While discretion to decline to exercise supplemental jurisdiction over state law claims is

2   triggered by the presence of one of the conditions in § 1367(c), it is informed by the values of

3   economy, convenience, fairness, and comity." *Acri v. Varian Associates, Inc*., 114 F.3d 999,

4   1001 (9th Cir. 1997)(*internal citations omitted*).

5          Two of the four conditions in § 1367(c) are present.  As above, all Plaintiffs' federal

6   claims are dismissed by this order.  Accordingly, this Court has "dismissed all claims over which

7   it has original jurisdiction," and so has discretion to decline to exercise supplemental jurisdiction

8   over the state law claims under § 1367(c)(3).  Moreover, the remaining state claims "raise novel

9   or complex issues of state law" under § 1367(c)(1).   Accordingly, the values of economy,

10  convenience, and comity may well be served by this Court's declining to exercise supplemental

11  jurisdiction.  *See Acri* at 1001.  The value of fairness is also served by the Court not exercising

12  jurisdiction over the state law claim of breach of contract.

13      Although "it is generally within a district court's discretion either to retain jurisdiction to

14  adjudicate the pendent state claims or to remand them to state court,"  *Harrell v. 20th Ins. Co.,*

15  934 F.2d 203, 205 (9th Cir. 1991) in the interest of fairness, the remaining parties, Plaintiff and

16  NTT Centerstance, should be given an opportunity to be heard on whether the Court should

17  decline to exercise jurisdiction and dismiss the claim without prejudice.  Plaintiff and NTT

18  Centerstance's briefs, if any, are due April 26, 2013.  Parties' briefs should not exceed three

19  pages.  Consideration of the parties' responses to the order to show cause should be noted for

20  April 26, 2013.

21                              III.     **<u>ORDER</u>**

22          It is **ORDERED** that:

23

24

- Defendant NTT Centerstance, Inc. and Defendant TrueBlue, Inc.'s Motion to Strike Plaintiff's Untimely Amended Complaint (Dkts. 54 and 55) **ARE DENIED**;

- Defendant NTT Centerstance, Inc. and Defendant TrueBlue, Inc.'s Motion for Relief from a Deadline to File a Responsive Pleading (Dkts. 54 and 55) **ARE GRANTED**;

    o  The deadline for Defendants' responsive pleadings to Plaintiff's amended complaint, if any, is **RESET** to **MAY 10, 2013**;

- Defendant NTT Centerstance, Inc.'s Motion to Dismiss Complaint pursuant to Fed. R. Civ. P. 12(b)(6), 28 U.S.C. § 1915(e)(2)(B), and 12(b)(5) (Dkt. 42) **IS DENIED** as to Plaintiff's contract claim, and **GRANTED** as to all Plaintiff's other claims;

- All Plaintiff's claims asserted against NTT Centerstance, except the contract claim, **ARE DISMISSED**;

- Defendant TrueBlue, Inc.'s Joinder of Motion Filed by Centerstance, Inc. to Dismiss Complaint pursuant to Fed. R. Civ. P. 12(b)(6), 28 U.S.C. § 1915(e)(2)(B), and 12(b)(5) (Dkt. 43) **IS GRANTED;**

- Plaintiff's claims asserted against TrueBlue, Inc. **ARE DISMISSED;** and

- Plaintiff and Defendant NTT Centerstance are ordered to show cause, if any they have, why this Court should not decline to exercise jurisdiction over the breach of contract claim.  Briefs, if any, should be filed on or before **April 26, 2013** and not exceed three pages.  Consideration of the parties' responses to the order to show cause should be noted for **April 26, 2013**.

1       The Clerk is directed to send uncertified copies of this Order to all counsel of record and

2  to any party appearing *pro se* at said party's last known address.

3       Dated this 11th day of April, 2013.

ROBERT J. BRYAN
United States District Judge